**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
ROY C. ROBERTS, III          :    Civil No. 1:17-CV-01129 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Roy C. Roberts, III, brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #16]** is **GRANTED** and this matter is REMANDED to the Commissioner for further administrative proceedings. Defendant's Motion for Judgment on the Pleadings **[Doc. #19]** is **DENIED.**

## I. ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed.

1

Plaintiff protectively filed an application for DIB and SSI benefits on October 9, 2013. In both applications plaintiff alleged disability as of March 20, 2011; that was later amended to March 29, 2013.[1] [Certified Transcript of the Record, Compiled on January 30, 2018, Doc. #5 (hereinafter "Tr.") 20, 47, 112-13; 205-14, 278-80]. Plaintiff alleged disability due to diabetes, neuropathy in hands and feet, vision problems due to diabetes and metal plate in ankle. [Tr. 123, 242]. His applications were denied on January 23,2014. [Tr. 134-41]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on February 25, 2014. [Tr. 142-44].

On March 17, 2016, Administrative Law Judge ("ALJ") Bryce Baird held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 37-88]. Vocational Expert ("VD") Michael A. Klein also testified at the hearing. [Tr. 74-85]. On June 10, 2016, the ALJ found that plaintiff was not disabled, and denied his DIB and SSI claims. [Tr. 17-36]. Plaintiff filed a timely request for review of the hearing decision on June 10, 2016. [Tr. 203-04]. On August 31, 2017, the Appeals Council denied review, thereby rendering ALJ Baird's decision the final decision of the Commissioner. [Tr. 1-6]. The case is now ripe

---

[1] Plaintiff amended the alleged onset date of disability to March 29, 2013, on the record during the ALJ's hearing and in a pretrial brief dated March 16, 2016. [Tr. 47, 278-80].

for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

## II.  STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal

standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014)

(internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Mr. Roberts must demonstrate that he is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c)(requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[2]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth steps:

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the Secretary must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens of production and persuasion, but if the analysis proceeds to the fifth step, there is a limited shift in the burden of proof and the Commissioner is obligated to demonstrate that jobs exist in the national or local economies that the claimant can perform given his residual functional capacity." Gonzalez ex rel. Guzman v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)). "Residual functional capacity" is what a person is still capable of doing despite limitations resulting from his physical and mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."

Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation omitted). "[E]ligibility for benefits is to be determined in light of the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." Id. (citation and internal quotation marks omitted).

## IV. THE ALJ'S DECISION

Following the above-described five step evaluation process, ALJ Baird concluded that plaintiff was not disabled under the Social Security Act. [Tr. 17-36]. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 29, 2013, the alleged onset date.[3] [Tr. 22].

At step two, the ALJ found that plaintiff had diabetes mellitus, diabetic peripheral neuropathy, right ankle fracture status post-surgery, right thumb fracture status post-surgery, and diabetic retinopathy, all of which are severe impairments under the Act and regulations. [Tr.23].

At step three, the ALJ found that plaintiff's impairments, either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 24]. The ALJ specifically considered Listings 2.02 (loss of central visual acuity), and

---

[3] SSI benefits are not payable for any period prior to the month after the application is filed. See 42 U.S.C. §1382(c)(7); 20 C.F.R. §§416.335, 416.501. Plaintiff's date last insured for Title II benefits is September 30, 2016. [Tr. 22].

11.14 (peripheral neuropathies). [Tr. 24-25]. The ALJ also
conducted a psychiatric review technique and found that
plaintiff had no restriction in activities of daily living;
social functioning; and concentration, persistence or pace. [Tr.
23-24]. The ALJ found no episodes of decompensation. [Tr. 24].

Before moving on to step four, the ALJ found plaintiff had
the RFC

> to perform sedentary work as defined in 20 C.F.R.
> 404.1567(a) and 416.967(a) except he can lift and
> carry 10 pounds occasionally and 5 pounds frequently.
> The claimant will be able to sit for up to six hours
> in an 8-hour day and stand and/or walk up to 2 hours
> in an 8-hour day. He could not use foot controls
> bilaterally and is limited to frequent climbing of
> ramps or stairs. In addition, he is limited to no
> climbing of ladders ropes or scaffolds, and frequent
> balancing. He is further limited to frequent handling
> of objects, fingering of objects, and feeling of
> objects bilaterally. Finally, the claimant should have
> no exposure to excessively cold or hot environments,
> no exposure to excessive vibration, and no exposure to
> hazards such as unprotected heights or moving
> machinery.

[Tr. 25-30].

At step four, the ALJ found plaintiff was unable to
perform any past relevant work. [Tr. 30-31]. At step five,
after considering plaintiff's age, education, work
experience and RFC, the ALJ found that jobs existed in
significant numbers in the national economy that plaintiff
could perform. [Tr. 31-32].

**V.  DISCUSSION**

Plaintiff makes two arguments in support of his position that the ALJ's decision should be reversed and/or remanded. The Court will address these arguments in turn.

**A.  RFC Assessment**

Plaintiff first argues that the RFC assessment was not supported by substantial evidence and was legally erroneous. [Doc. #16-1 at 9-14]. He contends that the ALJ erred in substituting his own medical judgment for that of a physician and "erred in failing to rely on any medical authority" in determining the RFC. [Doc. #16-1 at 11]. The Court agrees.

An ALJ has the responsibility to determine a claimant's RFC based on all the evidence of record. 20 C.F.R. §§404.1545(a)(1), 416.945(a)(1). The RFC is an assessment of "the most [the disability claimant] can still do despite [his or her] limitations." 20 C.F.R. §404.1545(a)(1), 416.945(a)(1). Although "[t]he RFC determination is reserved for the commissioner...an ALJ's RFC assessment is a medical determination that must be based on probative evidence of record.... Accordingly, an ALJ may not substitute his own judgment for competent medical opinion." Walker v. Astrue, No. 08-CV-0828(A)(M), 2010 WL 2629832, at *6 (W.D.N.Y. June 11, 2010)(quoting Lewis v. Comm'r of Soc. Sec., No. 6:00CV1225(GLS), 2005 WL 1899, at *3 (N.D.N.Y. Aug. 2, 2005)(internal citations

omitted)). Nevertheless, plaintiff has the burden to demonstrate functional limitations that would preclude any substantial gainful activity. See 20 C.F.R. §§§404.1545(a)(3), 416.945(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); 42 U.S.C. §423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Although the RFC is assessed using "all the relevant evidence in [the] case record," id., the medical opinion of a treating physician is given "controlling weight" as long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

## B.    Opinion Evidence

Plaintiff argues that the ALJ rejected all of the medical opinions of record and improperly relied on his lay interpretation of the bare medical findings to make the residual functional capacity determination. [Doc. #16-1 at 9-11]. The administrative record contains numerous detailed treatment records, medical opinions from treating and examining sources, lab results and diagnostic imaging that relate the medical

evidence to what plaintiff can and cannot do functionally. Plaintiff accurately points out that there are numerous opinions by his treating physicians that were discounted and/or rejected by the ALJ.

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a treating source's opinion will usually be given more weight than a non-treating source. If it is determined that a treating source's opinion on the nature and severity of a plaintiff's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2), 416.927(c)(2). If the opinion, however, is not "well-supported" by "medically acceptable" clinical and laboratory diagnostic techniques, then the opinion cannot be entitled to controlling weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). If

the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307. "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Maenza v. Colvin, No. 14-CV-6596, 2016 WL 1247210, at *11 (W.D.N.Y. Mar. 24, 2016)(quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) and citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.")).

### 1. Primary Care Physician Dr. Vinod Patel and Podiatrist Dr. James Burruano

Plaintiff began treatment with primary care physician Dr. Vinod Patel in April 2012, for a medication renewal after "not com[ing] to the clinic for the past 7 months." [Tr. 521-25]. During the treatment relationship, Dr. Patel diagnosed plaintiff with type 2 diabetes with neurological complications and type 2 diabetes melitius-uncomplicated, uncontrolled and found that plaintiff was consistently not compliant with his diabetes medication or diet [Tr. 559 (April 30, 2012, blood sugar readings were between 220-350 mg/dl, history of diabetic retinopathy and reported tingling in both feet for several

months); Tr. 555 (May 7, 2012, "patient is not at goal. Hemoglobin A1C is >7"); Tr. 550-54 (August 29, 2012, noting that plaintiff was living in a shelter without a stove, "DM poorly controlled, monofilament testing showed sensation to light touch decreased over toes bilaterally); Tr. 548-49 (September 13, 2012, "sugar is high, needs to come back on Monday and will recheck the sugar ...."); Tr. 544 (November 19, 2012, plaintiff "reporting that blood sugar reading was 224"); Tr. 540-43 (February 18, 2013, reporting average glucose readings at 180-210. "The sensory exam shows diminished tactile sensation with monofilament testing."); Tr. 535-39 (July 24, 2013, noting average glucose readings at 200-250. A1C >7. "Monofilament testing: diminished tactile sensation with monofilament testing throughout both feet." "Compliance with medication discussed."); Tr. 526-34 (August 12, 2013, glucose reading at 451); Tr. 521, 525 (September 19, 2013, Glucose Finger Stick 373, "sugar is running around 100-220, "Currently, patient is not at goal."); Tr. 728-32 (September 13, 2014, blood sugar was over 400, returns after a year-missed multiple appointments, not compliant with taking insulin, "diminished tactile sensation with monofilament testing throughout both feet."); Tr. 723-27 (September 24, 2014, acute care visit with Dr. Min Yang presenting with lower extremity swelling, increased fatigue over last month, "has been able to walk about 5 blocks and then has

to stop d/t fatigue."); Tr. 718-22[4] (March 18, 2015, follow-up post March 4 hospitalization for dehydration, hyponatremia and hyperglycemia after a six month absence, also missed endocrine appointment, average glucose reading 200-400, A1C 13); Tr. 712-17 (April 17, 2015, not using any long acting insulin, blood sugar readings are 150-250, A1C 13. "Patient is noncompliant with diet and exercise."); Tr. 707-11 (June 17, 2015, plaintiff reported blood sugars "are frequently over 200." "Plaintiff has had neuropathy and placed his feet in hot water and did not realize how hot it was." Acquired blisters. Affecting his walking and driving. Lower examination abnormal due to wounds on his feet bilaterally, which are healing. Noted that plaintiff had retinopathy surgery 3 weeks earlier. Directed to follow-up with podiatrist, ophthalmologist, and endocrinologist.); Tr.

---

[4] Dr. Patel wrote,

> I have discussed with the patient about compliance issue. Patient was encouraged to take his insulin on a regular basis. Patient understands the possible complications of uncontrolled blood sugar. I have explained [to] him to have possible complication like retinopathy which he is undergoing treatment. He can also develop peripheral vascular disease, heart disease, and peripheral neuropathy which he already has. Patient was also told to comply with his appointments. And I have told him that I'll be discharging him from my practice if he missed 1 appointment. He understands, accepts it and []he has promised me to be more compliant.

[Tr. 721].

733-37 (January 15, 2016, "followed up with endocrine clinic", noting glucose finger stick results 229 and 295, awaiting start with insulin pump.).

The ALJ gave some weight to Dr. Patel's functional limitation assessment dated July 24, 2013.[5] [Tr. 29, 748-49]. Dr. Patel found no limitations to mental functioning. [Tr. 749]. The doctor found that plaintiff was very limited in walking, standing, lifting, carrying, pushing pulling, sending, and stairs or other climbing; moderately limited in using hands; and no limitations to sitting, seeing, hearing or speaking. [Tr. 749]. The ALJ gave

> this opinion some weight to the extent that it supports the claimant is able to do work at a sedentary exertional level. However, to the extent that Dr. Patel limits the claimant further than the residual functional capacity provides, for example, his limitation that the claimant is very limited in his ability to stand and walk, I give this portion of the evidence little weight. This portion of the opinion is not supported by the medical evidence of record. Specifically, during his internal medicine examination, the claimant did not require any assistance ambulating and he testified to standing in a factory after his amended alleged onset date and using public transportation.

[Tr. 29].

On March 25, 2016, Dr. Patel completed a Manipulative

---

[5] Dr. Patel completed a two page "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" form. [Tr. 748-49]. This form was completed when plaintiff was healing from right ankle surgery to remove hardware. [Tr. 535].

Limitations Medical Source Statement, identifying symptoms of paresthesia, joint deformity and reduced grip strength bilaterally to his hands. [Tr. 887-88]. Addressing pain/paresthesia, the doctor stated that plaintiff "has tingling and numbness and sometime[s] has sharp pain" and identified "reduced or absent sensation" bilaterally to palm and dorsum. [Tr. 887]. Plaintiff was limited to lifting less than 25 pounds bilaterally. [Tr. 888]. During an 8-hour work day, Dr. Patel opined that plaintiff would be able to grasp, turn, twist objects with his hands left/right and do fine manipulation with his fingers left/right less than 10% of the workday; and reach in front of his body and overhead less than 50% of the workday. [Tr. 888]. The doctor added, "If needed, I can get evaluation from physiotherapy or EMG study." [Tr. 888].

The ALJ gave this opinion little weight stating that

> Although Dr. Patel is the claimant's treating physician and is familiar with his conditions, Dr. Patel does not provide a narrative to support the limitations he assigned to the claimant. Furthermore, while the claimant has alleged diabetic neuropathy in his hands as well as numbness and tingling and increased pain from the residual effects of a fractured right thumb, there is no evidence in the record that these symptoms would limit the claimant to the extent opined by Dr. Patel.

[Tr. 30].

On this record, the Court finds that the ALJ had an obligation to seek additional information from Dr. Patel

17

regarding Roberts's peripheral neuropathy to his hands and feet and the impact those symptoms have on work-related functional limitations. Indeed, the record shows that after July 2013, Dr. Patel noted progressive changes in monofilament testing to plaintiff's feet with decreased sensation and an incident in 2015 of burning his feet during a water soak due to decreased sensation to temperature.

Beginning in May 2015, plaintiff began treatment with podiatrist Dr. James Burruano. [Tr. 811-14 (May 12, 2015, initial evaluation); Tr. 807-10 (May 26, 2015, follow-up after burning his feet during a water soak); Tr. 804-06 (December 14, 2015); Tr. 801-03 (February 8, 2016)]. In May and December 2015 and February 2016, plaintiff complained of "pain, decreased sensation and tingling and burning" in both feet. [Tr. 811 ("++ tingling burning and marked numbness feet and ankles"); Tr. 801, (describing pain at 7-8/10); Tr. 804 ("Pt. states the pain before was a 6-7/10 but now it's a 9/10.")]. In addition to experiencing neuropathic pain, plaintiff also stated that he was sleepy when taking Gabapentin to treat the neuropathy. [Tr. 803]. Neurologic examinations revealed "Sensory-Temperature-Decreased." [Tr. 802, 805]. Monofilament examinations revealed that plaintiff could not feel his great toe, third toe or fifth toe bilaterally. "Vibration-Decreased-Globally. Proprioception-Bilateral-Toes Impaired." [Tr. 802, 805].

On March 28, 2016, Dr. Burruano provided a "To Whom It May Concern" letter stating,

> Roy Roberts has diabetic chronic painful neuropathy with difficulty using machinery due to inability to feel surfaces when standing sitting or walking. Mr. Roberts also has pain and lancinatint sensations in feet and legs due to diabetic progressive neuropathy. He is currently under my care for neuropathy and has been taking medication to assist him in reducing his pain levels, but is still not able to perform labor intensive work and operate machinery."

[Tr. 890].

The ALJ gave this opinion

> some weight insofar as it is consistent with the medical evidence of record that shows the claimant is capable of work at the sedentary exertional level there is evidence in the record that the claimant's diabetic neuropathy has decreased his feeling sensation (Ex. B10F at 1, B14F at 1). However, Dr. Burruano does not provide a function-by-function analysis of the claimant's residual ability to engage in work related activities and therefore his opinion is only entitled to some weight.

[Tr. 30].

After discounting <u>all</u> of the opinions from plaintiff's treating physicians, including specialists, and a consultative examiner, the ALJ found that plaintiff had the RFC

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can lift and carry 10 pounds occasionally and 5 pounds frequently. The claimant will be able to sit for up to six hours in an 8-hour day and stand and/or walk up to 2 hours in an 8-hour day. He could not use foot controls bilaterally and is limited to frequent climbing of ramps or stairs. In addition, he is limited to no

climbing of ladders ropes or scaffolds, and frequent balancing. He is further limited to frequent handling of objects, fingering of objects, and feeling of objects bilaterally. Finally, the claimant should have no exposure to excessively cold or hot environments, no exposure to excessive vibration, and no exposure to hazards such as unprotected heights or moving machinery.

[Tr. 25].

The Court is unable to reconcile the ALJ's RFC finding with the medical evidence of record, and the opinions of Mr. Roberts's treating physicians and the consultative examiner. Because the ALJ gave little weight to Dr. Patel's opinion that plaintiff was very limited in his ability to stand and walk, and had significant limitations to grasp, turn and twist objects, engage in fine manipulations, with lifting restrictions, there is no medical opinion regarding Roberts's capacity to stand or walk or lift, "which are necessary activities for sedentary work." Martin v. Berryhill, No. 16-CV-6184-FPG, 2017 WL 1313837, at *3 (W.D.N.Y. Apr. 10, 2017)("Because the ALJ rejected Dr. Finkbeiner's opinion, the record lacks any medical opinion as to Martin's physical ability to engage in work at any exertional level on a regular and continuous basis in an ordinary work setting. There is no medical opinion regarding her capacity to sit, stand, walk, or lift, which are necessary activities for sedentary work. See 20 C.F.R. §§ 404.1567(a), 416.967(a)."); see also Maenza v. Colvin, No. 14-CV-6596, 2016 WL 1247210, at *12

(W.D.N.Y. Mar. 24, 2016)("It is beyond dispute that 'an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions.'")(quoting Raymer v. Colvin, No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015)(citing Younes v. Colvin, No. 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. April 2, 2015)("When [crediting only portions of a medical source opinion] smacks of 'cherry picking' of evidence supporting a finding while rejecting contrary evidence from the same source, an administrative law judge must have a sound reason for weighing portions of the same-source opinions differently."); Phelps v. Colvin, No. 12-GV-976S, 2014 WL 122189, at *4 (W.D.N.Y. Jan. 13, 2014)("The selective adoption of only the least supportive portions of a medical source's statements is not permissible." (internal quotations and brackets omitted)); Caternolo v. Astrue, No. 11-CV-6601, 2013 WL 1819264, at *9 (W.D.N.Y. April 29, 2013)("[I]t is a fundamental tenet of Social Security law that an ALJ cannot pick and choose only parts of a medical opinion that support his determination." (internal citations and quotations omitted)) (collecting cases); Searles v. Astrue, No. 09-CV-6117, 2010 WL 2998676, at *4 (W.D.N.Y. July 27, 2010)("An ALJ may not credit some of a doctor' s findings while ignoring other significant deficits that the doctor identified."); Dioguardi v. Comm'r of Soc, Sec., 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006)("While the ALJ

is not obligated to reconcile explicitly every conflicting shred
of medical testimony ... [t]he plaintiff [] is entitled to know
why the ALJ chose to disregard the portions of the medical
opinions that were beneficial to [his] application for
benefits." (internal quotations and citations omitted)).

While the Commissioner is free to decide that the opinions
of treating sources and other sources are entitled to no weight
or little weight, those decisions should be thoroughly
explained. Sears v. Astrue, Civil Action No. 2:11-CV-138, 2012
WL 1758843, at *3 (D. Vt. May 15, 2012). Indeed, when an ALJ
rejects all physician opinion evidence, an evidentiary deficit
exists. "[E]ven though the Commissioner is empowered to make the
RFC determination, '[w]here the medical findings in the record
merely diagnose [the] claimant's exertional impairments and do
not relate those diagnoses to specific residual functional
capabilities,' the general rule is that the Commissioner 'may
not make the connection himself.'" Martin, 2017 WL 1313837, at
*3 (quoting Wilson v. Colvin, No. 13-CV-6286P, 2015 WL 1003933,
at *21 (W.D.N.Y. Mar. 6, 2015)).

"Because there is no medical source opinion or functional
assessment supporting the ALJ's finding that [Mr. Roberts] can
perform sedentary work with restrictions, the Court concludes
that the RFC determination is without substantial support in the
record and a remand for further administrative proceedings is

appropriate." <u>House v. Astrue</u>, No. 5:11-CV-915 (GLS), 2013 WL 422058, at *4 (N.D.N.Y. Feb. 1, 2013)(citing <u>Suide v. Astrue</u>, 371 F. App'x 684, 689-90 (7th Cir. 2010)(holding that "the evidentiary deficit left by the ALJ's rejection" of a physician's reports, but not the weight afforded to the reports, required remand.)).

"In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." <u>Burgess v. Astrue</u>, 537 F.3d 117, 129 (2d Cir. 2008)(quoting <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999)); <u>see</u> <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998)("Even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] <u>sua</u> <u>sponte</u>.")).

> The proceedings before an ALJ are not supposed to be adversarial. Where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history "even when the claimant is represented by counsel or ... by a paralegal." <u>Perez v. Chater</u>, 77 F.3d 41, 47 (2d Cir.1996); <u>see</u> <u>also</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 37 (2d Cir. 1996) ("It is the rule in our circuit that 'the ALJ, unlike a judge in a trial, must herself affirmatively develop the record' in light of 'the essentially non-adversarial nature of a benefits proceeding.' This duty ... exists even when ... the claimant is represented by counsel." (quoting <u>Echevarria v. Secretary of Health & Human Servs.</u>, 685 F.2d 751, 755 (2d Cir. 1982))).

Richardson v. Barnhart, 443 F. Supp. 2d 411, 423 (W.D.N.Y. 2006).

Accordingly, the Court finds that the ALJ's conclusion that plaintiff can perform sedentary work with limitations is not supported by substantial evidence and additional administrative proceedings are required. This case is remanded for proper consideration of the RFC in accordance with the medical evidence, treating source opinions and regulations. On remand, the ALJ should develop the record as necessary to obtain further information as to plaintiff's functional limitations from treating and/or examining physicians, including obtaining a consultative examination or requesting a detailed functional assessment by a medical expert, and thoroughly explain his findings in accordance with the regulations. See Martin, 2017 WL 1313837, at *4 (citing Covey v. Colvin, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016)). The Commissioner on remand, "should employ whichever of these methods are appropriate to fully develop the record as to [Roberts's] RFC." Id. 2017 WL 1313837, at *4.

### 2. Consultative Examiner Dr. Donna Miller

Plaintiff argues, almost in passing, that the ALJ erred when assigning "little weight" to the January 2014 opinion of consultative examiner Dr. Donna Miller. [Doc.

#16-1 at 11; Tr. 29; 692-95]. Dr. Miller found that
plaintiff had a "mild limitation for prolonged standing and
walking." [Tr. 695]. In fact, the ALJ found that Roberts
was more functionally limited than the agency consultant
Dr. Miller opined, due to the reported history of a
fractured ankle with residual pain and a history of
peripheral neuropathy in his feet. [Tr. 692; 320]. The ALJ
adopted Dr. Miller's finding that plaintiff "should avoid
any temperature extreme, given his diabetic neuropathy."
[Tr. 25 (finding that "the claimant should have no exposure
to excessively cold or hot environments..."]. The ALJ
accurately points out that Dr. Miller "did not place any
weight restriction on the claimant or provide a function-
by-function analysis." [Tr. 29]. While it is accurate that
a weight restriction was not assessed, the CE accounted for
plaintiff's right hand pain and complaints of diabetic
neuropathy to his hands. The CE assessed fine motor
dexterity of the hands, finding that hand and finger
dexterity was intact and grip strength was 5/5 bilaterally.
[Tr. 692, 695]. Plaintiff provides no further argument or
basis for finding that the ALJ erred in the weight assessed
to the opinion of consultative examiner Dr. Miller. As set
forth above, the Commissioner will develop the record
further on remand.

### 3. Endocrinologist Dr. Paresh Dandona

Last, plaintiff argues that the Commissioner erred in failing to properly evaluate the favorable opinions of treating physician Dr. Paresh Dandona. [Doc. #16-1 at 14-20].

Plaintiff began treatment with endocrinologist Dr. Dandona on June 22, 2015. [Tr. 823-27]. At his initial appointment, plaintiff reported that in the prior month he was soaking his feet in water and burned the tops of both feet, but the blisters were now healed. [Tr. 823]. Plaintiff reported fasting blood sugar ranging 200-300. Id. On examination, the doctor noted that plaintiff's musculoskeletal range of motions was normal, digits/nails appeared normal and his gait was normal. [Tr. 825]. Glucose Finger stick was 49. [Tr. 826]. On neurological examination, the doctor noted abnormal peripheral reflexes, adding that the peripheral neuropathy should improve with better glycemic control. [Tr. 825, 827]. Dr. Dandona adjusted the diabetes medications, instructed plaintiff to meet with a CDE [Certified Diabetes Educator] for carb counting, monitor glucose and record in a provided log book; and noted that plaintiff was a candidate for pump therapy. [Tr. 826]. Plaintiff was due to return for a follow-up appointment in 3 weeks. [Tr. 827].

Plaintiff returned, however, almost seven months later, on January 11, 2016. [Tr. 819-22]. Dr. Dandona noted that he had not been seen since June 2015 and failed to show for two

appointments with the CDE for pump training. [Tr. 819]. His A1C was 12.4%. [Tr. 819]. Plaintiff reported that his neuropathy was unchanged. Id. "Review of systems [were] normal except as noted." [Tr. 819]. At this appointment, the doctor noted normal peripheral reflexes. [Tr. 821]. Plaintiff's glucose finger stick reading was 295. [Tr. 821]. Diabetes medications were adjusted, and plaintiff was provided with a new meter and asked to monitor and keep a glucose log with a food diary. "Neuropathy: Await improved control...Microalbuminuria: Await improved control." [Tr. 822].

Dr. Dandona saw plaintiff on February 8, 2016, for a follow-up examination. [Tr. 815-19]. His physical examination revealed no changes. [Tr. 815, 817]. Plaintiff's glucose finger stick reading was 55. [Tr. 818]. Diabetic medications were adjusted. [Tr. 818]. The treatment plan articulated by the doctor included diet, exercise, insulin and education. [Tr. 818]. "[C]omprehensive self-management skills (group), basic nutrition management, self-blood glucose monitoring and insulin pump instruction." [Tr. 818]. The doctor noted that plaintiff's diabetes remained uncontrolled with an A1C greater than 13%. [Tr. 818]. As set forth above, the record contains only three treatment records from Dr. Dandona; June 2015, January and February 2016.

On March 30, 2016, Dr. Dandona provided a "To Whom It May

Concern" letter, stating that Roberts

> suffers from badly controlled Diabetes Mellitus with elevated A1[C] levels for several years. He also has severe peripheral neuropathy and macular degeneration. His illness prevents him from working. Please grant him the support he needs.

[Tr. 889].

In assessing "little weight" to Dr. Dandona's opinion, the ALJ found that the doctor's

> Opinion is on an issue reserved to the Commissioner. The opinion of the claimant's physician on the issue of disability is not binding on the Administration because it involves non-medical issues that are not of the experts of the medical profession. According to SSR 96-Sp, these opinions are not controlling in regards to the residual functional capacity. The weight to be given to such conclusions depends only on the extent to which they are supported by specific and complete clinical findings and are consistent with the rest of the evidence in the file. As any medical opinion, the opinion  must be evaluated along with the rest of the evidence in the case record to determine the extent to which such opinions are supported by the record. In addition, Dr. Dandona only provides a conclusory opinion on the claimant's disability and does not provide a function-by-function analysis. For these reasons, I give this opinion little weight.

[Tr. 30].

Here, Dr. Dandona's treatment records noted normal range of motion, normal gait, normal digitus/nails, no use of an assisted device to ambulate, normal musculoskeletal, both normal and abnormal peripheral reflexes were noted. [Tr. 817, 821-22, 825, 827]. The doctor also noted that plaintiff's peripheral neuropathy should improve with better glycemic control. [Tr. 827, 822]. Nevertheless,

plaintiff's A1C was elevated in all three encounters with
Dr. Dandona. [Tr. 818, 822, 826]. Indeed, Dr. Patel's
treatment records consistently state that plaintiff's
diabetes was uncontrolled and Roberts's AIC scores were
consistently at elevated levels between 2011 and 2016. See
e.g. Tr. 538 (12.5); Tr. 642 (14.4); Tr. 648 (12.9); Tr.
710 (10.8); Tr. 762 (10.9); Tr. 815 (12.4); Tr. 818 (13);
Tr. 826 (10.8). On this record, it is unclear how
plaintiff's uncontrolled diabetes translates to work
related functional limitations. Dr. Dandona does not
provide an adequate explanation to reconcile his treatment
records with his opinion letter. As plaintiff's treating
endocrinologist, he should be asked to provide further
information as to the work related limitations caused by
plaintiff's diabetic condition.

## VI.  CONCLUSION

For the reasons stated, plaintiff's Motion for Judgment on
the Pleadings **[Doc. #16]** is **GRANTED.** Defendant's Motion for
Judgment on the Pleadings **[Doc. #19]** is **DENIED.** This case is
REMANDED for further proceedings consistent with this opinion,
pursuant to sentence four of 42 U.S.C. §405(g). See Curry v.
Apfel, 209 F.3d 117, 124 (2d Cir. 2000); 42 U.S.C. §1383(c)(3).

In light of the Court's findings above, it need not reach
the merits of plaintiff's remaining arguments. Therefore, this

matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion. On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #14] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport, Connecticut this 12th day of March 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE